Charles Curtis HARRIS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13179.

Court of Criminal Appeals of Oklahoma.

Feb. 1, 1962.

Rehearing Denied March 7, 1962.

Valdhe F. Pitman, Malcolm Baucum, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Dolorin Carl Thomas, Asst. County Atty., Oklahoma City, for defendant in error.

NIX, Presiding Judge.

Charles Curtis Harris, hereinafter referred to as the defendant, was charged by information in the District Court of Oklahoma County with the crime of grand larceny after former conviction of a felony. He was tried before a jury, found guilty, and his punishment assessed at five years in the Oklahoma State Penitentiary.

Defendant appeals to this court upon numerous assignments of error, only one of which the Court deems worthy of discussion. The charging part of the information upon which the defendant was tried reads as follows:

" * * * to-wit: On the 19th day of May A.D. 1961, in Oklahoma County, State of Oklahoma, CHARLES CURTIS HARRIS whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and feloniously commit the crime of GRAND LARCENY AFTER FORMER CONVICTION OF A FELONY in the manner and form as follows, to-wit:

That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully unlawfully, and feloniously take, steal and carry away by stealth and fraud, from the possession of ED SCHNETZLER, and without the knowledge and consent of the owner thereof, $39.00 in one dollar bills, good and lawful money of the United States of America, and the personal property of ED SCHNETZLER, the taking, stealing and carrying away of said property on the part of the said defendant was with the unlawful, wrongful and felonious intent to appropriate the same or the value thereof to his own use and benefit and to deprive the said rightful owner permanently thereof;

And the said offense of GRAND LARCENY AFTER FORMER CONVICTION OF A FELONY being punishable by imprisonment in the state penitentiary, and having been committed by the said defendant, as above set out, after having been convicted of the crime of BURGLARY IN THE FIRST DEGREE, on the 17th day of December, 1954, in Oklahoma County, State of Oklahoma, before the District Court sitting in and for said county and state, being District Court case No. 22748, and said former conviction of BURGLARY IN THE FIRST DEGREE being a crime punishable by imprisonment in the State Penitentiary; contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma."

The defendant three days prior to trial filed in said cause a motion to separate, which read as follows:

"Comes now the defendant, Charles Curtis Harris, and shows to the court that upon the first page of an information filed herein this defendant is charged with the crime of grant larceny, after former conviction of a felony; and that the same is prejudicial to the constitutional and statutory rights of this defendant.

Wherefore, defendant respectfully requests this honorable court to enter an order requiring the County Attorney to divide said information into two parts. In the first part the crime of grand larceny, as now alleged in the information should be set forth upon the first page of the information and signed by the said county attorney. In

the second part the former conviction, as now alleged in the information, should be set forth upon the second page of the information, separable from the first page, and signed by the County Attorney.

Defendant further prays that the entire information be read to the defendant and his plea be taken in the absence of the jurors; and that when the jury has been impanelled, the Clerk and/or County Attorney, should read to them only that part of the information which sets forth the crime of grand larceny, for which defendant is to be tried; and that the trial herein should then proceed in every respect as if there were no allegations of former conviction, and no mention should be made in the evidence, or in the remarks of counsel, or in the charge of the court; and that when the jury retires to consider the verdict, only the first page of the information on which the crime of grand larceny is set out, should be given to them; and if they return a verdict of guilty, the second part of the information, in which the former conviction is alleged, should be read to them without reswearing them, and they should then be charged to inquire on that issue for the purpose of setting the punishment therefor."

Defendant again objected to the county attorney referring to the former conviction during the voir dire examination of the jury. The objection was by the court overruled.

▉▉▉▉ When the state had rested defense counsel objected to that part of the instruction charging the jury as to the former conviction. The objection read as follows:

"MR. BAUCUM: The defendant excepts to the Court's instructions Number five (5) and six (6). Number five (5) is a correct statement of the law where both the present offense and the former offense is submitted to the Jury at the same time, but we are objecting to both five (5) and six (6) for the reason that we feel that they should not be submitted to the Jury until after first the Jury has determined the guilt or innocence of the defendant."

The assignment of error to be herein dealt with is welcomed by the Court and has heretofore been propitiously considered in many conferences. The Court has long been of the opinion that a definite procedure should be prescribed and established to govern the application of the second and subsequent offense statute of this state. The instant case brings the question squarely before us and affords the opportunity to supplement Title 21 O.S.A. § 51 with a procedure to invoke its application. Said statute reads:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction, is punishable therefor as follows:

1. If the offense of which such person is subsequently convicted is such that upon a first conviction an offender would be punishable by imprisonment in the penitentiary for any term exceeding five years, such person is punishable by imprisonment in the penitentiary for a term not less than ten years.

2. If such subsequent offense is such that, upon a first conviction the offender would be punishable by imprisonment in the penitentiary for five years, or any less term, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding ten years. * * *"

It is to be observed that at the time of this enactment the Legislature failed to elucidate a procedure to invoke its application or to effect its administration. This Court has in previous decisions suggested that legislation be effected setting forth a procedure to best serve the administration of justice and to ultimately preserve for the

defendant his inherent right to a fair and impartial trial. See Application of Igo, Okl.Cr., 331 P.2d 969, 972. Though legislation has been introduced in line with the Court's suggestion, it has encountered a coup de grâce in one house or the other. This Court assumes herein the theory that the defeat of such legislation was a result of failure to grasp the principal therein more so than an expression of hostility to a prescribed procedure. Since the Court recognizes the necessity of a clear and concise ruling on this long neglected phase of criminal procedure, further taciturnity shall not be endured and the Court will proceed upon the premise that the question to be determined shall be resoluted and resolved as a procedural matter which in absence of legislative implementation may be prescribed by the appellate Court. Considering this question as one of procedure is not without precedent. It was said in the case of Com. v. Boyer, (1940 Pa Quart Sess) 37 Pa.Dist. & Co.R. 81, 139 A.L.R. 687:

"However, there is nothing to prevent defendant's attorneys from moving the trial judge, when the case appears before him to rule out evidence of the prior convictions until the jury returns a verdict, on the substantive offense, nor is there any reason why the damaging statements in the indictment itself need be submitted to the jury on their retirement though the indictment is usually sent out with the jury, that is largely in the discretion of the trial judge. * * * If he fears it contains matter prejudicial to the prisoner, it is within his power to withhold it altogether, or to submit a copy with the offensive parts removed, or to cover up and seal those portions. A motion seasonably taken at the close of the trial could *thus insure defendant the same protection granted him in other states either by statute or by judicially created procedure. Nor is there any principal in our reported cases which would prevent the adoption of this practice*"

The cases of this Court are replete with consistency in holding that the second and subsequent offense act of this state was never intended to supply substantive evidence of the guilt of the accused in the principal case, but only to enhance the punishment in the event his guilt should be proved by independent testimony.

See Sallisbury v. State, 80 Okl. Cr. 13, 156 P.2d 149; Ex parte Wright, 78 Okl.Cr. 157, 145 P.2d 772; Ex parte Shockly, 78 Okl.Cr. 101, 144 P.2d 118; Spann v. State, 69 Okl.Cr. 369, 103 P.2d 389. In the Sallisbury case, supra, the Court said:

"The habitual criminal statute does not create a new or independent crime, but describes circumstances wherein one found guilty of a specific crime may be more severely penalized because of his previous conviction, as alleged and found; "habitual criminality" being a state rather than a crime."

A reiteration of the discussion in the Igo case, supra, is apropos. Your writer, from more than the average experience in the practice of criminal law, has long believed that the hazard presented in the matter of prior convictions, pleaded in an indictment or information, far exceeds any value derived therefrom. Whether under the statute, it is properly or improperly pleaded, the contentions that defendant is prejudiced thereby cannot be without merit. There can be little doubt that one of the "gems" of our jurisprudence is that a defendant is presumed to be innocent until proven guilty and no one can deny that reading an information to a jury reciting numerous previous convictions has a strong tendency to destroy that presumption of innocence. All jurisdictions are in accord and the rule everywhere excludes not only evidence of another crime, but also evidence tending to degrade the accused, to prejudice the jury against him, to divert their minds from the real issue which they have to determine, or to persuade them by matters which they have no legal right to consider, and that the accused, for reasons other than those based

upon legitimate evidence, was more likely to have committed the particular crime for which he is on trial. The statute in most of the states which provides for additional punishment for subsequent offenders has created an abundance of litigation in all jurisdictions having the same. It has been contended that it constituted double punishment. That if defendant served his time on one offense and paid his debt to society that the offense could not be used as a basis for additional punishment in case of a subsequent conviction. Likewise, it has been contended that it constitutes double jeopardy. Decisions are numerous holding contrary to these contentions. It has been asserted in numerous appeals that the court erred in permitting the county attorney to read, to the jury, that part of the information alleging previous convictions. That the defendant was prejudiced thereby. Though this contention has been overruled it has never been said to be without merit, and in most instances, have remarked in the dictum of said decision that entire fairness in prosecution of this character would suggest some statutory changes. State v. Finding, 123 Minn. 413, 144 N.W. 142, 49 L.R.A.,N.S., 449; People v. Sickles, 156 N.Y. 541, 51 N.E. 288; State ex rel. Edelstein v. Huneke, 140 Wash. 385, 249 P. 784, 250 P. 469; Johnson v. People, 55 N.Y. 512.

In the Edelstein case, supra, (140 Wash. 385, 249 P. 785) the Supreme Court of Washington went as far as to say:

"It seems too plain for argument that to place before a jury the charge in an indictment, and to offer evidence on trial as part of the state's case that the defendant has previously been convicted of one or more offenses is to run a great risk of creating a prejudice in the minds of the jury that no instruction of the court can wholly erase, and, while appellate courts will presume that the jury has followed the instructions of the court, yet we cannot blind our eyes to the active danger ever lurking in such action. Courts have so recognized this fact that, although finding no

error in the charging and showing to the jury upon an original charge the fact of previous convictions, they have frequently adverted to its danger and suggested ways to eliminate that prejudice."

Research will reveal that this question has been highly controversial for more than a century and in most instances looked upon with skepticism. One of the first cases raising the question was State v. Smith, 8 Rich.Law 460, 42 S.C.Law Rep. 460, reported May 1832. In that case defendant was charged with horse stealing, second offense; the first offense punishable by whipping, the second offense death without benefit of clergy. It is interesting to note that their cumulative punishment allowed the benefit of clergy after first conviction and second conviction was without benefit of clergy. They said in the Smith case, supra:

"The indictment need not state whether it is for the first or a second offense, although the crime be punishable for the first offense with whipping and for the second with death without benefit of clergy."

The New York Supreme Court in January, 1884, commented on the question in Johnson v. People, supra, and said:

"The objection that the evidence may affect the prisoner's character has no force when such evidence relates to the issue to be tried. Such evidence may be prejudicial to a prisoner as to the second offense and a case might occur of a conviction upon too slight evidence, though the influence which a previous conviction of a similar offense exerts upon the minds of the jury; but there is no legal presumption that such a result will ever be produced."

History will reveal that this question reached such a point in England in 1837 that a statute was enacted prohibiting the reading of the information to the jury relative to previous convictions. It provided that the principal charge was to be found by the jury, and then proof of previous convictions

was presented to them. In the case of State v. Ferrone, 96 Conn. 160, 113 A. 452, 457, April, 1921, calling attention to the great danger of prejudice in such a case, sets out a procedure that it believed to be fair to the defendant which is much the same as the English statutes, saying:

"The information should be divided into two parts. In the first the particular offense with which the accused is charged should be set forth, and this should be upon the first page of the information and signed by the prosecuting officer. In the second part former convictions should be alleged, and this should be upon the second page of the information, separable from the first page and signed by the prosecuting officer. The entire information should be read to the accused and his plea taken in the absence of the jurors. When the jury has been impaneled and sworn, the clerk should read to them only that part of the information which sets forth the crime for which the accused is to be tried. The trial should then proceed in every respect as if there were no allegations of former convictions, of which no mention should be made in the evidence, or in the remarks of counsel, or in the charge of the court. When the jury retire to consider their verdict, only the first page of the information, on which the crime charged is set out, should be given to them. (See below *). If they return a verdict of guilty, the second part of the information, in which former convictions are alleged, should be read to them without reswearing them, and they should be charged to inquire on that issue."

In discussing the matter further in the Ferrone case, supra, the Court said:

"It cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice or by considerations by which the jury should not be influenced, if during that trial allegations that he has twice before been convicted of state prison crimes have been read to the jury, and evidence of his former convictions has been placed before them. It is beyond question that knowledge of such facts must necessarily prejudice the minds of his triers against the accused, and cause him more serious injury than that which he would suffer from any improper remarks of the state's attorney."

It was no doubt in recognition of the prejudice that might be created that the Legislature of several states has prescribed a procedure that protected the rights of the defendant in such case. Some require a supplemental hearing after the jury has reached a verdict, said hearing to be before the trial judge prior to sentence date, at which time evidence will be heard relative to previous conviction. It has been suggested that it would be a wholesome procedure. to exclude evidence of previous conviction from the jury and after they had rendered their verdict as to guilt or innocence and assessed the punishment that the trial judge be vested with the authority, in case of previous conviction to make the punishment conform to the habitual criminal act, provided the jury had assessed the punishment less than the minimum under

* (The jury at this juncture of the trial should be charged with the sole responsibility of reaching a verdict as to the guilt or innocence of the defendant upon the charge for which he is being tried. If the jury then returns with a verdict of guilty, then evidence should be presented to prove the second portion of the information as to the previous convictions. The jury will then retire to assess the punishment within the limits prescribed by statute for the primary offense or if they find he was guilty of a previous conviction, then and in that event they may set the punishment as set forth in Title 21 O.S.A. § 51.)

said Act. This, of necessity, leads us to the primary purpose of this discussion whether the rights of a defendant are safeguarded by the established procedure, or whether the practice contended for by the defendant will more nearly approach unto that great end, which, although not always attained, is the delight of all courts—namely, a fair trial for all persons freed from every taint of prejudice.

It is the opinion of the Court that the procedure in line with the statute of England and as set forth in the Ferrone case, supra, is a fair and just procedure and should have been invoked in line with defendant's motion which requested the procedure announced in the Ferrone case to the letter. Said procedure is hereby adopted and should be followed in all future prosecutions. Any previous decision of this Court contrary hereto is by this decision overruled. This decision in no manner precludes inquiry of the witness as to previous conviction for the purpose of effecting his credibility; Neither is it applicable to a previous misdemeanor conviction which forms the base for a felonious prosecution as permitted, for instance, in Title 47 OSA § 93.

■■ Reversal of the instant case is not justified for two reasons: One—that the jury in the instant case ignored the court's instruction as to second and subsequent offense and found defendant guilty only of the offense for which he was being tried and set his punishment in accordance therewith. Secondly, the Court denied defendant's request for separation and proceeded under a well-established rule promulgated by the trial court's and heretofore approved by this Court. The rule herein adopted is to become effective upon its rendition by this Court.

The case is therefore affirmed with admonition to trial judges to hereafter follow the procedure adopted herein.

BRETT and BUSSEY, JJ., concur.